1

2

3

O

4

5

6

7

8            UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11   J.C.W., a minor, by and )   Case No. EDCV 07-1421-VAP
     through his Guardian ad )   (AJWx)
12   Litem, ALAN F. WEEKS,   )
                              )   **[Motions filed on December**
13            Plaintiff,     )   **3, 2007 and January 10,**
                              )   **2008]**
14       v.                  )
                              )   **ORDER GRANTING IN PART AND**
15   DESERT SANDS UNIFIED     )   **DENYING IN PART DEFENDANTS'**
     SCHOOL DISTRICT; JOHN    )   **MOTIONS TO DISMISS AND TO**
16   DAVID DEVILLE; NOLAN     )   **STRIKE**
     SPARKS; And DOES 1-100,  )
17   Inclusive,              )
                              )
18            Defendants.    )
     _____ )

19

20       Defendants' Motions to Dismiss came before the Court

21   for hearing on February 4, 2008.  After reviewing and

22   considering all papers filed in support of, and in

23   opposition to, the Motions, as well as the arguments

24   advanced by counsel at the hearing, the Court GRANTS in

25   part and DENIES in part Defendants' Motions to Dismiss.

26   ///

27   ///

28

# I. BACKGROUND

## A.   Procedural History

Minor Plaintiff James Calum Weeks, by and through his Guardian ad Litem, Alan F. Weeks, filed a Complaint ("Compl.") on October 2, 2007 in California Superior Court for the County of Riverside, naming as Defendants Desert Sands Unified School District ("DSUSD"), John David Deville, and Nolan Sparks.  The Complaint asserts claims for (1) assault and battery; (2) false imprisonment; (3) hazing; (4) negligence; (5) intentional infliction of emotional distress; (6) violation of civil rights under sections 52 and 52.1 of the California Civil Code ("Bane Act"); and (6) violation of civil rights under 42 U.S.C. § 1983.

Defendants removed the action to this Court on October 30, 2007.  Defendants DSUSD and John David Deville ("DSUSD Defendants") filed a Motion to Dismiss ("DSUSD Mot.") on December 3, 2007.  Defendant Nolan Sparks filed a separate Motion to Dismiss ("Sparks Mot.") on January 10, 2008.  Plaintiff filed an Opposition to the DSUSD Motion ("Opp'n to DSUSD") on January 14, 2008 and an Opposition to the Sparks Motion ("Opp'n to Sparks") on January 18, 2008.  Defendant Sparks filed a Reply on January 25, 2008.  DSUSD Defendants failed to file a Reply.

///

**B.  Plaintiff's Allegations**

Plaintiff was a freshman student at Palm Desert High School at the time of his alleged injury.  (Compl. ¶ 13.) Defendant DSUSD employed Defendants Deville and Sparks as water polo coaches.  (Compl. ¶¶ 2-3.)  DSUSD hired Deville and Sparks in that capacity without any background investigation whatsoever.  (Id. ¶¶ 14-15.) DSUSD failed to obtain Deville's or Sparks's thumbprint, address, or criminal history before hiring them.  (Id. ¶¶ 14-15.)  DSUSD further failed to train Deville or Sparks in supervising students or in promoting school safety and preventing violence.  (Id. ¶¶ 14-15.)

On October 10, 2006, Plaintiff participated in tryouts for the Palm Desert High School water polo team. (Id. ¶ 16.)  In the locker room following the tryouts, members of the team grabbed Plaintiff and taped him to a stretcher with duct tape.  (Id.)  His hands, feet, and midsection were taped while members of the team held him against his will.  (Id.)  These team members placed Plaintiff, taped to the stretcher, on top of two trash cans, and placed a third trash can on top of Plaintiff. (Id.)  Another student placed a wet condom over Plaintiff's nose and mouth.  (Id.)  The students took Plaintiff into the girls' restroom and leaned him up against a stall.  (Id.)  A team member then placed his genitals over Plaintiff's face.  (Id.)  During the entire

incident, members of the team took pictures of Plaintiff, further humiliating him.  (<u>Id.</u>)

Defendants Sparks and Deville witnessed all the above events and laughed at the hazing.  (<u>Id.</u> ¶ 17.)  Sparks and Deville admitted to Assistant Principal Mark Shalhoub that they had been present during the entire incident. (<u>Id.</u> ¶ 18.)  Sparks and Deville had direct control and supervision responsibilities over the students who took these actions against Plaintiff.  (<u>Id.</u> ¶ 17.)

After the incident, school officials fired Deville and suspended Sparks.  (<u>Id.</u> ¶ 18.)  Defendant DSUSD has never apologized to Plaintiff for the incident either formally or informally.  (<u>Id.</u> ¶ 18.)

DSUSD, Sparks, and Deville each had a duty to supervise the conduct of students on the grounds of the high school and under their supervision and control. (<u>Id.</u> ¶ 19.)  Sparks and Deville knowingly failed to exercise that duty when they condoned the assault and battery, false imprisonment, and hazing perpetrated by students under their control and supervision.  (<u>Id.</u> ¶ 19.)

When Plaintiff requested records of the incident from Defendant DSUSD, DSUSD refused to provide such records.

1  (Id. ¶ 21.)  The California Superior Court for the County

2  of Riverside eventually ordered DSUSD to produce the

3  records, and awarded attorneys' fees and costs to

4  Plaintiff for his efforts to obtain the records.  (Id.)

5

6      When Plaintiff attempted to file a claim with

7  Defendant DSUSD, DSUSD required him to file the claim on

8  its own form and refused to provide such a form by mail

9  or facsimile transmission.  (Id. ¶ 22.)  Plaintiff

10 nevertheless complied with this requirement, filing a

11 claim on DSUSD's form on or about March 29, 2007.  (Id. ¶

12 23.)  Keenan and Associates, claims administrator for

13 DSUSD, rejected the claim on April 3, 2007.  (Id.)

14

15     Defendant DSUSD withheld its records from Plaintiff

16 and imposed additional claim-filing requirements for the

17 sole purpose of intimidating and discouraging rightful

18 claimants from exercising their rights to receive public

19 records and to make claims against Defendant DSUSD.  (Id.

20 ¶ 24.)

21

22              **II. LEGAL STANDARD**

23     Under Rule 12(b)(6), a party may bring a motion to

24 dismiss for failure to state a claim upon which relief

25 can be granted.  As a general matter, the Federal Rules

26 require only that a plaintiff provide "'a short and plain

27 statement of the claim' that will give the defendant fair

28

notice of what the plaintiff's claim is and the grounds
upon which it rests." Conley v. Gibson, 355 U.S. 41, 47
(1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic
Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964
(2007).  In addition, the Court must accept all material
allegations in the complaint -- as well as any reasonable
inferences to be drawn from them -- as true.  See Doe v.
United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC
Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096
(9th Cir. 2005).

    "While a complaint attacked by a Rule 12(b)(6) motion
to dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitlement to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements
of a cause of action will not do." Bell Atlantic, 127 S.
Ct. at 1964-65 (citations omitted).  Rather, the
allegations in the complaint "must be enough to raise a
right to relief above the speculative level." Id. at
1965.

    Although the scope of review is limited to the
contents of the complaint, the Court may also consider
exhibits submitted with the complaint, Hal Roach Studios,
Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19
(9th Cir. 1990), and "take judicial notice of matters of

1  public record outside the pleadings," <u>Mir v. Little Co.</u>
2  <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

3

4                    **III. DISCUSSION**

5  **A.   Statutory Immunities**

6       DSUSD Defendants argue that they are immune from
7  Plaintiff's state law claims under sections 815 and 820.2
8  of the California Government Code.[1]  Section 815 provides
9  that public entities are not liable for any injury
10 "except as provided by statute."  Cal. Gov't Code § 815.
11 Thus, claims against public entities must be based on
12 statute, not common law.  <u>Munoz v. City of Palmdale</u>, 75
13 Cal. App. 4th 367, 369 (1999).  This restriction,
14 however, applies only to claims against public entities,
15 not to claims against public employees.  <u>See</u> Cal. Gov't
16 Code § 820(a).

17

18      Here, Plaintiff does allege a statutory basis of his
19 right to relief for claims three and five.  (<u>See</u> Compl. ¶
20 38 (citing Cal. Educ. Code § 903; Cal. Penal Code §
21 245.6); Compl. ¶ 60 (citing Cal. Civ. Code §§ 52 and
22 52.1).)  Accordingly, Desert Unified is not immune from
23 these claims under Cal. Gov't Code § 815.

---

24      [1] DSUSD Defendants also argue that Plaintiff  must
   "plead with specificity" and "plead with particularity
25 the existence of a statutory duty," citing <u>Davidson v.</u>
   <u>Santa Barbara High Sch. Dist.</u>, 48 F. Supp. 2d 1225
26 (1998).  (DSUSD Mot. at 6-7.)  <u>Davidson</u> does not support
   this proposition, and indeed makes no mention of a
27 requirement of pleading a "mandatory statutory duty" with
   specificity or particularity.  <u>See Davidson v. Santa</u>
28 <u>Barbara High Sch. Dist.</u>, 48 F. Supp. 2d 1225 (1998).

1    Plaintiff also alleges that Defendants violated

2 California Civil Code section 43 by assaulting Plaintiff.

3 (See Compl. ¶ 26.)  Plaintiff does not allege, however,

4 that this or any other statute gives him a right to

5 relief against Defendant Desert Unified School District

6 ("Desert Unified"), a public entity, for assault and

7 battery, false imprisonment, or negligence.

8

9    Desert Unified may be vicariously liable, however,

10 for the conduct of its employees.  See Cal. Gov't Code §

11 815.2(a).  Here, Plaintiff alleges that Defendants Sparks

12 and Deville acted in the course and scope of their

13 employment or agency with Desert Sands when they

14 committed the alleged acts of assault and battery, false

15 imprisonment, and negligence against him.  (See Compl. at

16 4-6); see also Thompson v. Sacramento City Unified School

17 Dist., 107 Cal. App. 4th 1352, 1371-72 (2003) (explaining

18 that a school district may be liable for its employees'

19 negligent supervision of students under § 815.2(a)).

20 Accordingly Desert Sands is not immune  from vicarious

21 liability for Plaintiff's first, second and fourth

22 claims.

23 ///

24 ///

25    Section 820.2 provides that "a public employee is not

26 liable for an injury resulting from his act or omission

27 where the act or omission was the result of the exercise

28

of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  Section 815.2 provides that a public entity is not liable for acts of its employees if the employee is immune.  Cal. Gov't Code § 815.2.

Here, Defendants do not even argue that Sparks and Deville had discretion under California law to encourage and condone physical restraint and assault of a student by other students under their supervision.  Accordingly, Defendants are not immune under Cal. Gov't Code § 820.2.

**B.  Section 1983 Claim**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that defendants, acting under the color of state law, deprived him of a right secured by the laws or constitution of the United States.  42 U.S.C. § 1983. Here, Plaintiff alleges defendants, acting under color of state law, violated his rights to freedom from illegal seizure, privacy, and due process, under the Fourth, Ninth, and Fourteenth Amendments to the United States Constitution and the California Constitution.  (Id. ¶ 64.)

///

**1.  Liability of Defendants for Failing to Prevent Violence**

1     DSUSD Defendants argue that Plaintiff cannot state a

2  claim for violation of his rights because he alleges only

3  that Sparks and Deville "witnessed the hazing incident"

4  and fails to allege that they affirmatively acted to

5  violate his rights.  (DSUSD Mot. at 14-15.)  Plaintiff

6  answers that Defendants subjected him to a deprivation of

7  his constitutional rights by omitting to perform acts

8  legally required of them, thus causing the deprivation.

9  (Opp'n to Sparks at 9-10.)

10

11     The United States Supreme Court has held that

12  the failure of a state actor to protect a person from

13  violence committed by private actors does not constitute

14  a deprivation of rights in the absence of a "special

15  relationship."[2]  DeShaney v. Winnebago County Dept. of

16  Social Services, 489 U.S. 189, 197 (1989).  In DeShaney,

17  a severely abused child and his mother sued the county

18  and county officials under § 1983 for their failure to

19  intervene to protect the boy from violence by his father,

20  even though they knew or should have known of the

21  father's potential for violence against the child.  Id.

22  The Court held that the county defendants could not be

---

23     [2] Plaintiff argues that the Ninth Circuit has held
that "[a] person "subjects" another to the deprivation of

24  a constitutional right, within the meaning of section
1983, if he . . . omits to perform an act which he is

25  legally required to do that causes the deprivation of
which complaint is made."  (Opp'n to DSUSD at 9-10

26  (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.
1978).)  Johnson, however, predates DeShay and its

27  progeny, which more clearly delineate the circumstances
under which an omission, rather than an affirmative act,

28  can give rise to § 1983 liability.

liable because they had no affirmative duty to protect the child.  Id.

In contrast, where there is a "special relationship," state actors may have an affirmative duty to provide services and protection to individuals.  Id. at 189-200.  In DeShaney, the Court recognized such a special relationship exists between the state and incarcerated prisoners and involuntarily committed mental patients, so that the state has an affirmative duty to provide such persons with medical care.  Id. at 189-90. The Court explained:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--e.g., food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

Id. at 200.

The Ninth Circuit has not ruled on whether the state has a "special relationship" with public school students resulting in an affirmative duty to protect them from violence.  Most courts that have considered the question, however, have found that no such special relationship exists.  See, generally, Safe Enough To Learn: Placing An Affirmative Duty Of Protection On Public Schools Under 42 U.S.C. Section 1983, 30 Harv.

C.R.-C.L. L. Rev. 169, 178-183 (1995) ("<u>Safe Enough to Learn</u>").

For example, in <u>Doe v. Petaluma City Sch. Dist.</u>, a junior high school student sued school officials for their failure to prevent other students from sexually harassing her.  <u>Doe v. Petaluma City Sch. Dist</u>. 830 F. Supp. 1560 (N.D. Cal. 1993).  The court held that the student failed to state a § 1983 claim because compulsory school attendance did not restrain an individual's liberty to the same degree as incarceration or involuntary commitment, and thus did not create a "special relationship" giving rise to an affirmative duty to protect students from harm.  <u>Id.</u> at 1580-81.

Similarly, in <u>D.R. v. Middle Bucks Area Vocational Technical Sch.</u>, plaintiff high school students alleged that other students had abused them verbally and physically.  <u>D.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1365-66 (3d Cir. 1992). The Third Circuit held that "the school defendants' authority over [the plaintiff] during the school day cannot be said to create the type of physical custody
///
necessary to bring it within the special relationship noted in <u>DeShaney</u>."  <u>Id.</u> at 1372.

12

1    In Graham v. Independent Sch. Dist. No. I-89, the

2 Tenth Circuit declined to impose an affirmative

3 constitutional duty to protect students even when the

4 plaintiff alleged school officials were aware of imminent

5 danger.  Graham v. Independent Sch. Dist. No. I-89, 22

6 F.3d 991, 995 (10th Cir. 1994).  In Graham, the

7 plaintiffs alleged that a high school student shot and

8 killed another student even after school officials were

9 warned the assailant had a gun and had threatened

10 violence against the decedent.  Id. at 993.  The court

11 held that foreseeability cannot create an affirmative

12 constitutional duty absent a custodial relationship.  Id.

13 at 994-95.[3]

14

15    In contrast to the above cases that distinguish

16 strictly based on whether a plaintiff was in state

17 custody, the Ninth Circuit has recognized that state

18 actors have an affirmative constitutional duty to avoid

19 placing individuals in positions of danger.  Wood v.

20 Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989).  In

21 Wood, the plaintiff alleged that a state trooper pulled

22 over the car in which she was a passenger, arrested the

_____

23    [3] In contrast, both the Fifth and Eleventh Circuits
have held that schools do owe an affirmative

24 constitutional duty to protect students at boarding
schools, as opposed to day schools.  See Walton v.

25 Alexander, 20 F.3d 1350, 1356 (5th Cir. 1994); Spivey v.
Elliot, 29 F.3d 1522, 1522 (11th Cir. 1994).  The Fifth

26 Circuit has also held that school officials may be liable
under § 1983 for acts of a school employee, but such

27 liability was based on the employee-employer
relationship.  Doe v. Taylor Indep. Sch. Dist., 15 F.3d

28 443, 453 (5th Cir. 1994).

driver, and impounded the car, leaving her stranded in a
dangerous neighborhood at 2:30 a.m. with no
transportation.  Id. at 586.  As a result, the plaintiff
was raped by an unknown assailant.  Id.

The Ninth Circuit held that the plaintiff stated a
claim against the trooper under § 1983.  Id. at 589-90.
The trooper owed the plaintiff a duty "to afford her some
measure of peace and safety" because he had
"affirmatively placed the plaintiff in a position of
danger."  Id.  The court distinguished DeShaney, in which
the Supreme Court noted the "state 'played no part' in
creating the dangers that minor child faced by remaining
in his father's custody 'nor did [the state] do anything
to render [the child] any more vulnerable to them.'"  Id.
at 590 (quoting DeShaney, 489 U.S. at 201).

The Ninth Circuit recently reaffirmed the viability
of this "state created danger" doctrine, explaining that
"it is . . . well established that, although the state's
failure to protect an individual against private violence
does not generally violate the guarantee of due process,
it can where the state action 'affirmatively place[s] the
plaintiff in a position of danger.'" Kennedy v. City of
Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006). Indeed,
many jurisdictions have recognized the "state created
danger" doctrine for decades.  Id. at n.1.

No circuit court has ever upheld § 1983 liability for a school district under the "state created danger" theory, however.  <u>Safe Enough to Learn</u>, <u>supra</u>, at 177. In <u>Graham</u>, for instance, where school officials failed to prevent a school shooting even after being warned, the Tenth Circuit held that school officials did not "create a hazardous situation by placing the aggressor and victim in the same location." <u>Graham</u>, 22 F.3d at 995.  "[A]ny danger to the victims was too remote a consequence of [defendants'] action to hold them responsible under the federal civil rights law." <u>Id.</u> (quotations omitted). The Tenth Circuit later narrowed the doctrine further, holding that danger-creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." <u>Sutton v. Utah State Sch. for the Deaf & Blind</u>, 173 F.3d 1226, 1238 (10th Cir. 1999).

In <u>Middle Bucks</u>, the Third Circuit explained that state actors are liable for private violence under the "state created danger" theory where the state action or inaction "encouraged or implicitly authorized" the violence.  <u>Middle Bucks</u>, 972 F.2d at 1375.  In that case, other students repeatedly sexually assaulted the plaintiffs in a darkroom and a bathroom.  <u>Id.</u> at 1366. The doors to the darkroom and bathroom opened into a graphic arts classroom.  <u>Id.</u>  The plaintiffs alleged the

student teacher assigned to the classroom was or should
have been in the classroom during the assaults and heard
or should have heard the assaults.  Id.  The plaintiffs
did not ever inform the student teacher about the
assaults.  Id.  The Third Circuit held that even if
school officials had trained or assigned the teacher
deficiently, that failure did not result in an implicit
authorization of violence, and thus the assaults were not
a "state-created danger."  Id. at 1375.

     In contrast, in Horton v. Flenory, the Third Circuit
found a "state-created danger" where a state actor
implicitly authorized a private party's continued
restraint of a plaintiff.  Horton v. Flenory, 889 F.2d
454, 458 (3d Cir. 1989).  In that case, a police officer
responded to a call alleging employee theft, and arrived
to witness the employer restraining and interrogating the
employee.  Id.  Notwithstanding signs of physical abuse
of the employee and requests by the employee to be freed
from restraint, the officer left without freeing the
employee, because an official police department policy
delegated law enforcement responsibility in private
nightclubs to club owners.  After the officer left, the
employer beat the employee to death.  Id.  The officer's
failure to remove the employee from the custody of the
employer implicitly authorized the employer's violence
and thus resulted in a "state-created danger."  Id.

Both the Ninth and Third Circuits relied on a passage by Judge Posner of the Seventh Circuit explaining the difficulty of determining when there is a state-created danger:

> We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.

Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982) (quoted in Middle Bucks, 972 F.2d at 1374; Wood, 879 F.2d at 594).

The Eastern District of Michigan confronted a case similar to the one before the Court.  In Reeves v. Besonen, the plaintiff, a member of his high school football team, was assaulted by other team members in a hazing incident while on a school bus driven by his coach.  Reeves v. Besonen, 754 F. Supp. 1135, 1136-37 (E.D. Mich. 1991).  The plaintiff alleged the coach violated his substantive due process rights by failing to curtail or prevent the hazing.  Id. at 1139.  The court held the plaintiff failed to state a claim under § 1983 because the coach did not have a "special relationship" with the plaintiff within the meaning of DeShaney.  Id.

17

at 1139-41.   The court did not consider, however, whether
the coach had a duty to intervene based on the "state-
created danger" theory as enunciated in <u>Wood</u> and <u>Middle</u>
<u>Bucks</u>.    Indeed, the <u>Reeves</u> court explicitly rejected the
Ninth Circuit's approach in <u>Wood</u>, arguing that <u>DeShaney</u>
prohibits imposing a constitutional duty to prevent
state-created dangers in non-custodial situations.   <u>Id.</u>
at 1140 n.1.

    Here, as in <u>Petaluma City Sch. Dist.</u> and <u>Reeves</u>,
Defendants did not have a "special relationship" with
Plaintiff within the meaning of <u>DeShaney</u>.   See <u>Petaluma</u>
<u>City Sch. Dist</u>. 830 F. Supp. at 1580-81; <u>Reeves</u>, 754 F.
Supp. at 1139-41.   Defendants Sparks and Deville did
engage, however, in conduct that resulted in a "state-
created danger," and thus had a duty to attempt to
prevent or halt the students under their supervision from
assaulting Plaintiff.

    Unlike the facts in all the cases cited above except
<u>Horton</u>, Plaintiff alleges the Defendants here witnessed
the violence against Plaintiff and expressed approval and
encouragement of the violent acts.   Plaintiff alleges
that Defendants Sparks and Deville actually witnessed the
entire hazing incident and laughed during it, thus
expressing their approval and encouragement.   (Compl. ¶

1   17.)   The Complaint further alleges the coaches

2   "condoned" the assault against Plaintiff.  (<u>Id.</u> ¶ 18.)

3

4        Unlike <u>Graham</u>, where school officials were warned of

5   a possible attack but did not witness it--much less laugh

6   while they watched its perpetration--Plaintiff here

7   alleges that school officials witnessed and encouraged

8   the attack.  (<u>See</u> Compl. ¶¶ 17-18); <u>cf.</u> <u>Graham</u>, 22 F.3d

9   at 995.   Indeed, the Tenth Circuit's requirement of

10   "affirmative conduct" has been met because defendants

11   allegedly encouraged the acts.   <u>See</u> <u>Sutton</u>, 173 F.3d at

12   1238.   Unlike in <u>Middle Bucks</u>, where the teacher "should

13   have known" about assaults occurring in adjacent rooms

14   but neither witnessed nor condoned them, Plaintiff here

15   alleges that his coaches affirmatively condoned attacks

16   while actually witnessing them.  (<u>See</u> Compl. ¶¶ 17-18);

17   <u>cf.</u> <u>Middle Bucks</u>, 972 F.2d at 1375.

18

19        Indeed, as in <u>Horton</u>, Plaintiff alleges that

20   Defendants were in a position of authority, witnessed an

21   illegal and violent detention committed by those over

22   whom they exercised rightful authority, and failed to

23   intervene to stop the illegal detention, thus implicitly

24   authorizing the detention and resultant assault.  (<u>See</u>

25   Compl. ¶¶ 17-18); <u>cf.</u> <u>Horton</u>,  889 F.2d at 458.

26   Moreover, here, where Plaintiff alleges that Defendants

27   expressed approval by laughing at the assault, there is

28

even more affirmative endorsement of the assault than in
Horton, where the officer merely failed to free the
plaintiff.  (See Compl. ¶¶ 17-18); cf. Horton, 889 F.2d
at 458.  Accordingly, Plaintiff has stated a claim for
deprivation of his rights under § 1983 because he has
alleged Defendants Sparks and Deville "render[ed] [the
plaintiff] . . . more vulnerable" to the private violence
he suffered.  Wood, 879 F.2d at 590 (quoting DeShaney,
489 U.S. at 201).

### 2.   Fourteenth Amendment Violations

DSUSD Defendants argue that Plaintiff fails to allege
any acts constituting a violation of his Fourteenth
Amendment rights.  (Mot. at 15.)  The United States
Supreme Court has held that bodily integrity is part of
the liberty interest protected by the due process clause,
and thus that physical abuse of students by school
officials implicates the Fourteenth Amendment.  Ingraham
v. Wright, 430 U.S. 651, 673-74 (1977).  Thus, a
plaintiff states a claim for violation of the Fourteenth
Amendment if he alleges physical abuse by third parties
resulting from a "state-created danger."  Wood, 879 F.2d
at 589-90.  Accordingly, by alleging Defendants condoned
and encouraged an assault on his person, Plaintiff has
stated a claim for violation of his substantive due
process rights under the Fourteenth Amendment.

1          3.   "Mere Negligence"

2          Defendant Sparks argues that Plaintiff fails to state

3   a § 1983 claim because he alleges only negligent acts by

4   Defendants.  (Sparks Mot. at 5.)  Indeed, allegations of

5   mere negligence are insufficient to state a claim under §

6   1983.  Wood, 879 F.2d at 587 (citing Daniels v.

7   Williams, 474 U.S. 327, 330-32 (1986)).  In contrast,

8   allegations of deliberate indifference are sufficient to

9   state such a claim.  Id. at 588.  Here, Plaintiff alleged

10  that Defendants acted with "reckless and callous

11  disregard" for his protected rights.  (Compl. ¶ 68.)

12  Moreover, the Complaint alleges that Defendants Sparks

13  and Deville stood by laughing as students under their

14  control forcibly restrained, assaulted, and humiliated

15  Plaintiff.  (Compl. ¶¶ 16-18.)  These averments are

16  sufficient to constitute an allegation of deliberate

17  indifference.  See Doe, 419 F.3d at 1062 (reasonable

18  inferences from allegations made in the complaint must be

19  taken as true in a 12(b)(6) motion).

20

21          4.   Redress of State Law Violations

22          DSUSD Defendants also argue that Plaintiff cannot

23  seek redress for violations of the California

24  Constitution under § 1983, which only provides relief or

25  violations of federal constitutional or legal rights.

26  (DSUSD Mot. at 14.)  Plaintiff has alleged violations of

27  federal constitutional or legal rights, however, and such

28

1  allegations are sufficient to state a claim under § 1983,

2  regardless whether he also alleges violations of other

3  rights for which that section does not provide relief.

4

5  **C.   Sufficiency of Tort Allegations**

6      DSUSD Defendants argue that Plaintiff has failed to

7  allege facts sufficient to state his first through fifth

8  claims for civil torts against Defendant Deville,

9  apparently because Plaintiff failed to allege he was

10  "physically assaulted or otherwise assault[ed] by Coach

11  Deville."  (DSUSD Mot. at 7-8.)  As Plaintiff points out,

12  however, school personnel are liable under California law

13  for breaching their duties to supervise students

14  properly.  (See Opp'n to DSUSD at 5); see also Hoff v.

15  Vacaville Unified Sch. Dist., 19 Cal. 4th 925,

16  934 (1998); Hoyem v. Manhattan Beach City Sch. Dist., 22

17  Cal. 3d 508, 513 (1978); Mosley v. San Bernardino City

18  Unified Sch. Dist., 134 Cal. App. 4th 1260, 1264-1265

19  (2005); Charonnat v. San Francisco Unified Sch. Dist., 56

20  Cal. App. 2d 840, 843-44 (1943).

21

22      Defendant Sparks argues that a plaintiff cannot state

23  a tort claim against a school district employee for

24  "aiding and abetting" intentional torts of another unless

25  the plaintiff alleges "substantial assistance or

26  encouragement" of the intentional torts.  (Sparks Mot. at

27  3 (citing Austin B. v. Escondido Union Sch. Dist., 149

28

Cal. App. 4th 860, 878-79 (2007)).)   In <u>Austin B.</u>, two

autistic children alleged that a teacher had abused them

physically.   <u>Id.</u> at 266-69.   The court held that other

school district employees were not liable for battery of

the children because plaintiffs failed to show those

employees provided "substantial assistance" to the

alleged abuser.   <u>Id.</u> at 879.   The court explained,

> California has adopted the common law
> rule for subjecting a defendant to
> liability for aiding and abetting a tort.
> Liability may ... be imposed on one who
> aids and abets the commission of an
> intentional tort if the person (a) knows
> the other's conduct constitutes a breach
> of duty and gives substantial assistance
> or encouragement to the other to so act
> or (b) gives substantial assistance to
> the other in accomplishing a tortious
> result and the person's own conduct,
> separately considered, constitutes a
> breach of duty to the third person.

<u>Id.</u> at 879.


    Plaintiff replies that he is not relying on an

"aiding and abetting" theory of liability for intentional

torts, but is instead proposing a breach of the school

district's duty to provide adequate supervision.   (Opp'n

to Sparks at 5.)   Indeed, California law imposes a duty

on a school district to "exercise reasonable care in

supervising students in its charge," and imposes

liability on for "injuries proximately caused by the

failure to exercise such care."   <u>Hoyem</u>, 22 Cal. 3d at

513.   The breach of a duty of care, however, constitutes

negligence, not intentional tort.   Indeed, all the cases

cited by Plaintiff on this point involve claims for
negligent failure to supervise, not claims for
intentional torts.  See Hoff v. Vacaville Unified Sch.
Dist., 19 Cal. 4th 925, 934 (1998); Hoyem, 22 Cal. 3d at
513; Mosley v. San Bernardino City Unified Sch. Dist.,
134 Cal. App. 4th 1260, 1264-1265 (2005); Charonnat v.
San Francisco Unified Sch. Dist., 56 Cal. App. 2d 840,
843-44 (1943).  Accordingly, Plaintiff has failed to
state a claim against Defendants for the intentional
torts of assault and battery, false imprisonment, and
intentional infliction of emotional distress, because he
has failed to allege "substantial assistance."

The cases cited by Plaintiff, however, do support
imposing liability on school districts and school
district employees for injuries caused by breach of a
school district's duty to exercise reasonable care in
supervising students in its charge.  See Hoyem, 22 Cal.
3d at 513; see also Hoff, 19 Cal. 4th at 934-35
(elaborating on the specific standard of care owed by
districts and employees with respect to supervising
students).  Accordingly, Plaintiff has stated a claim for
negligence.

///

**D.   Sufficiency of Hazing Allegations**

DSUSD Defendants argue that Plaintiff has failed to
allege facts sufficient to state a claim against

24

1   Defendant Deville for hazing under California Penal Code

2   section 245.6 because that statute excludes "customary

3   athletic events or school sanctioned events." (DSUSD

4   Mot. at 8-10.)   To the extent that DSUSD Defendants are

5   arguing that the alleged acts of duct taping a child to a

6   stretcher and sexually humiliating him are "customary

7   athletic events or school sanctioned events," this

8   argument is preposterous.  See Fed. R. Civ. Proc. 11.

9

10   DSUSD Defendants also argue the anti-hazing statue

11   does not apply because Plaintiff failed to allege that he

12   was "seeking membership to any organization." (DSUSD

13   Mot. at 10.)   Even assuming that a claim under the anti-

14   hazing statute requires an allegation that the plaintiff

15   was seeking membership to an organization, the plain text

16   of Plaintiff's complaint makes such an allegation.   The

17   Complaint clearly alleges that Weeks was "attempting to

18   make the Junior Varsity Water Polo team of Palm Desert

19   High School." (Compl. ¶ 16.)   Accordingly, Plaintiff has

20   stated a claim for hazing under California Penal Code

21   section 245.6.

22   ///

23   ///

24   ///

25   **E.   Sufficiency of Bane Act Allegations**

26   DSUSD Defendants argue that Plaintiff fails to state

27   a claim under the Bane Act because he does not allege

28

1   that Defendants coerced or attempted to coerce him.

2   (DSUSD Mot. at 11-12.)[4]

3

4           California Civil Code § 52.1 provides
            that anyone whose exercise or enjoyment
5           of rights secured by the Constitution or
            laws of the U.S. "has been interfered
6           with or attempted to be interfered with"
            by any person who engages in "threats,
7           intimidation, or coercion, or attempts to
            interfere by threats, intimidation, or
8           coercion" may file a civil action for
            damages.
9               Section 52.1 requires an attempted or
            completed act of interference with a
10          legal right, accompanied by a form of
            coercion.
11
    Mendez v. County of Alameda, 2005 WL 3157516, *10 (N.D.
12  Cal. 2005) (quoting Cal. Civil Code § 52.1(a), (b)).

13          The essence of a Bane Act claim is that
            the defendant, by the specified improper
14          means (i.e., "threats, intimidation or
            coercion"), tried to or did prevent the
15          plaintiff from doing something he or she
            had the right to do under the law or to
16          force the plaintiff to do something that
            he or she was not required to do under
17          the law.

18  Austin B. v. Escondido Union Sch. Dist., 149 Cal. App.

19  4th 860, 883 (2007).

20

21      The Austin B. court held that because the plaintiffs

22  failed to allege the abuse of two autistic children was

23  intended to prevent them from exercising their right to

24  attend school, they did not state a claim under the Bane

25  Act.  Id. at 883.  Similarly, Plaintiff here has not

26      [4] DSUSD Defendants also argue that Plaintiff has
    failed to state a claim under the Ralph Act, California
27  Civil Code section 51.  (See DSUSD Mot. 10-11.)
    Plaintiff, however, only attempts to state a claim under
28  sections 52.1 and 52.

                                26

1   alleged that Defendants intended to prevent him from

2   exercising his right to attend school or any other right.

3   See Id.  Nor has he alleged that Defendants intended to

4   force him to do anything he was not required to do under

5   the law.  See Id.  Accordingly, Plaintiff has failed to

6   state a claim under the Bane Act.

7

8   **F.   Punitive Damages**

9        A municipality is immune from liability for punitive

10  damages.  City of Newport v. Fact Concerts, Inc., 453

11  U.S. 247, 271 (1981).  Plaintiff concedes the Court

12  should strike references to punitive damages against

13  Defendant Desert Unified from the Complaint.[5]  Defendants

14  provide no authority, however, for their assertion that

15  the prayer for punitive damages against the individual

16  defendants is improper.  (See DSUSD Mot. at 15-16; Sparks

17  Mot. at 5-6 (citing Cal. Gov't Code § 818).)

18  Accordingly, the Court strikes references to punitive

19  damages against the school district defendant, but not

20  against the individual defendants.

21

22       Defendant Sparks also argues that punitive damages

23  are unavailable from him as a matter of law because

24  _____

25       [5] DSUSD Defendants did not include a Motion to Strike
    in their Notice of Motion and Motion.  Instead, they Move
    to Dismiss, listing improper punitive damages as a ground
26  for dismissal.  (DSUSD Mot. at 14-15.)  The proper
    vehicle for this request is a Motion to Strike under
27  Federal Rule of Civil Procedure 12(f).  Nevertheless,
    the Court will strike the claim for punitive damages for
28  the reasons given above.

1  Plaintiff fails to allege he engaged in any "malicious"
2  conduct.  (Sparks Mot. at 6.)  Plaintiff's allegations
3  that Sparks laughed while observing vicious assaults by
4  students under his control are sufficient to allege
5  "malicious" conduct.

6

7  **G.   Attorneys' Fees**

8       Defendants argue that the prayer for attorneys' fees
9  in the Complaint is improper because this action will not
10 "result[] in the enforcement of an important right
11 affecting the public interest."  (DSUSD Mot. at 16-17
12 (quoting Cal. Civ. Proc. Code § 1021.5); Sparks Mot. at
13 7.)  The Court declines to decide in the context of a
14 Motion to Dismiss whether, as a matter of law, the right
15 to liberty protected by the due process clause of the
16 United States Constitution is not an "important right
17 affecting the public interest."

18

19                    **IV. CONCLUSION**

20      For the foregoing reasons, the Court GRANTS
21 Defendants' Motions to Dismiss Plaintiff's first, second,
22 fifth, and sixth claims for assault and battery, false
23 imprisonment, intentional infliction of emotional
24 distress, and violations of sections 52 and 52.1 of the
25 California Civil Code ("Bane Act") as to all Defendants
26 with leave to amend.  The Court DENIES Defendants'
27 Motions to Dismiss Plaintiff's third and seventh claims

28

1 | for hazing and violation of civil rights as to all
2 | parties.
3 |
4 |     Additionally, the Court STRIKES Plaintiff's prayer
5 | for punitive damages from Defendant Desert Unified School
6 | District.
7 |
8 |
9 | Dated:   February 10, 2008
10 |                              VIRGINIA A. PHILLIPS
                 United States District Judge

29